Rambert L. SIMMONS, Appellee,

v.

AVISCO, LOCAL 713, TEXTILE WORK-ERS UNION OF AMERICA, Appellant.

No. 9827.

United States Court of Appeals Fourth Circuit.

Argued April 8, 1965.

Decided Sept. 13, 1965.

Beecher E. Stallard, Richmond, Va., for appellant.

G. William White, Jr., Richmond, Va., for appellee.

Before SOBELOFF and J. SPENCER BELL, Circuit Judges, and STANLEY, District Judge.

SOBELOFF, Circuit Judge:

An intra-union dispute which resulted in the suspension of a member gave rise to this suit for restoration to membership and for damages. Jurisdiction is under the Labor-Management Reporting and Disclosure Act (LMRDA), 73 Stat. 522–523 (1959), commonly referred to as the Landrum-Griffin Act.

The plaintiff, Rambert L. Simmons, is a member and former president of the defendant, Avisco, Local 713, Textile Workers Union of America. In an election conducted by the union from December 10 through December 14, 1962, Simmons ran for the office of business agent. It was discovered during the election that certain voted ballots had been stolen from the ballot box. The union's election committee voided the results of the election and initiated an investigation to determine who was responsible for the theft of the ballots.

In the course of the investigation a detective agency hired by the committee sought to administer polygraph tests to the thirteen persons who had been candidates. The election committee required each individual to sign a form agreement reciting that the test was taken voluntarily and without duress or coercion, and releasing the examiner from all claims arising from the examination. Twelve signed the form and took the test. Simmons declared his willingness to submit to the test and presented himself to the examiner, but refused to sign the release. The test was therefore not administered to him.

Approximately ten months later, on September 20, 1963, the union's executive board, without notice to Simmons, voted to suspend him for "non-cooperation" in the investigation. Shortly thereafter, however, the union president rescinded this action of the executive board because of the lack of notice to Simmons. Then, on September 30, 1963, A. P. Chinn, the chairman of the investigating committee, filed a written complaint against Simmons, again charging him with "non-cooperation." This time Simmons was sent a copy of the complaint and was in-

vited to appear at a hearing to be held by the local executive board on October 7, 1963. He appeared and requested that the hearing be open to the entire union membership. When this request was denied, he left. The meeting proceeded, with Chinn presenting the case against Simmons. The committee, which included Chinn, then voted to suspend Simmons until such time as he would sign the release and take the polygraph test.

When the president of the local union later informed Simmons of his right to appeal to the executive council of the international union, his reply was, "I am going to appeal all right, but it is not going to be the way you are telling me to appeal." Without complying with the provisions of the constitution of the international union and the local by-laws,[1] Simmons filed suit on October 31 in the District Court pursuant to section 102 of the LMRDA, 29 U.S.C.A. § 412,[2] alleging that his suspension from membership was in violation of section 101(a) (5), 29 U.S.C.A. § 411(a) (5). This is the section of the statute's Bill of Rights of Members of Labor Organizations which provides safeguards against improper disciplinary action.[3] In addition to a prayer for injunctive relief, the complaint sought damages, both actual and punitive, for loss of income, mental anguish, and injury to reputation caused by the illegal suspension.

At a hearing on a motion for preliminary injunction, Judge Butzner overruled the defendant's objection that the plaintiff had failed to exhaust his internal union remedies, and issued a preliminary mandatory injunction on January 8, 1964, reinstating him *nunc pro tunc* as of December 19, 1963, pending trial of the case on the merits. When the case came on for trial there was no further discussion or ruling on the defense of exhaustion of internal union remedies which the defendant had raised in its answer.

In accordance with Simmons' prayer the case was tried before a jury. Judge Lewis, who presided, ruled that the plaintiff was not entitled to punitive damages, and so instructed the jury. After a verdict was returned in favor of the plaintiff in the amount of $15,000, the defendant moved for judgment *n. o. v.* or in the alternative for a new trial. The

---

1. Article XV, section 6 of the constitution of the Textile Workers Union of America, the international union, provides that:

    "No member shall institute any civil action, suit, or proceeding in any court or before any administrative body, against the International Union, or any of its local unions * * * on account of any controversy for which a remedy by trial or appeal is provided for in this Constitution *unless and until he has first exhausted all such remedies of trial and appeal.*" (Emphasis added).

    Section 1(a) of that article provides that a union member may appeal from a decision of the local union's executive board to the executive council of the international union. According to section 3, any decision of the executive council may in turn be appealed to the convention of the international union, a body which convenes once every two years. Section 4 requires that all appeals shall be filed within thirty days after the rendition of the decision from which the appeal is taken.

    Article XIII, section 5 of the by-laws of Avisco, Local 713, states that:

    "Appeal from decisions of the Executive Board of this Local Union may be taken to the Executive Council of the International and to the Convention of Textile Workers Union of America, in the manner provided in the International Constitution."

2. Section 102 provides that:

    "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. * * *"

3. 29 U.S.C.A. § 411(a) (5) provides that:

    "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

primary objection, raised for the first time, was that the plaintiff was not entitled to a jury trial. The motion was overruled as untimely. The court then entered judgment on the verdict and made permanent the preliminary injunction which had been entered in January, 1964.

## I

On this appeal the union makes multiple attacks upon the proceedings below. Its first contention is that because Simmons failed to exhaust available internal union remedies the complaint should have been dismissed. We are of another view.

■ The jurisdiction of federal courts in suits brought under section 102 for violations of the LMRDA's Bill of Rights is defined by section 101(a)(4). See Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 925 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). This section reads:

> "No labor organization shall limit the right of any member thereof to institute an action in any court * * * *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administra-

tive proceedings against such organizations * * *."

The proviso was designed to further LMRDA's purpose of achieving union democracy by giving unions a reasonable opportunity to correct abuses and by encouraging them to set up machinery for the prompt and fair disposition and review of disputes. The Act therefore authorizes the federal courts [4] to follow the common law practice of requiring a union member to exhaust internal union remedies before bringing suit.

■ As previously noted,[5] the constitution of the international union and the by-laws of the local union provide procedures for the hearing of disciplinary charges by the local union's executive board as well as for review of these proceedings by both the international union's executive council and convention.[6] The statute, however, does not make the exhaustion of hearing procedures mandatory in all cases, but allows the courts in their discretion to determine whether pursuit of such remedies is required. Detroy v. American Guild of Variety Artists, 286 F.2d. 75, 78–79 (2d Cir. 1961).

It has been held, both at common law [7] and under the Act [8] that internal union remedies need not be exhausted where the action taken by the union is "void." This rather elastic term has been applied

4. Although it is generally held that it is the courts which are authorized to require exhaustion, the proviso has been read as authorizing the union and not the court to require a union member to exhaust internal union remedies before bringing suit. See concurring opinion of Judge Hastie in Sheridan v. United Brotherhood of Carpenters, Etc., 306 F.2d 152, 159 (3d Cir. 1962).

5. See n. 1 supra.

6. Although there is a body of opinion that it is impossible for union members to obtain fair and reasonable hearings on disciplinary charges unless the proceedings are subject to review by independent tribunals of outsiders, advocated by Aaron, "The Labor-Management Reporting and Disclosure Act of 1959," 73 Harv. L.Rev. 851 (1960), or before independ-

ent and qualified judges, advocated by Summers, "Legal Limitations on Union Discipline," 64 Harv.L.Rev. 1049 (1951), the procedures established by the union here appear on their face to be "reasonable" within the meaning of § 101(a) (4), but in the view we take of the case this need not be determined.

7. E.g., Tesoriero v. Miller, 274 App.Div. 670, 88 N.Y.S.2d 87 (1949); Shapiro v. Gehlman, 244 App.Div. 238, 278 N.Y.S. 785 (1935). Other cases are collected and discussed in Summers, "The Law of Union Discipline: What the Courts Do in Fact," 70 Yale L.J. 175, 209 (1960); and Summers, "Legal Limitations on Union Discipline," 64 Harv.L.Rev. 1049, 1089 (1951).

8. Libutti v. DiBrizzi, 337 F.2d 216, 219 (2d Cir. 1964).

to proceedings where no proper notice was given, where the tribunal was biased, where the offense charged was not one specified in the union constitution or where there have been other substantial jurisdictional defects or a lack of fundamental fairness. As recognized by Chief Judge Lumbard in Libutti v. DiBrizzi, 337 F.2d 216, 219 (2d Cir. 1964), the concept of voidness lacks precision, and its use may necessitate a hearing on the merits before a ruling on exhaustion can be made. He points out, however, that "[w]hen conceded or easily determined facts show a serious violation of the plaintiff's rights, the reasons for requiring exhaustion are absent."

In the instant case the District Court, after holding a hearing on the motion for preliminary injunction and on the issue of exhaustion of union remedies, found that Simmons' rights had been violated because under the local's by-laws the executive board was without authority to suspend Simmons. Article XIII provides that members may be disciplined for violating a decision of the executive council or of the local union, for dishonesty, misconduct, or conduct detrimental to the welfare of the Textile Workers Union of America. None of these charges was made against Simmons, and "non-cooperation," the charge for which he was punished, is not an offense specified in the union's constitution.

■ The District Court's ruling that the union lacked authority to discipline Simmons for "non-cooperation" goes to the very heart of the case. Standing alone, this conclusion is sufficient to invalidate the disciplinary proceeding, and it becomes unnecessary to consider

the correctness of other rulings that the union was guilty of additional violations of the Act.[9] It is established law that a union cannot discipline its members except for offenses stated in its constitution and by-laws, and that the courts lack the power to recognize "implied offenses" and thereby rewrite the union's constitution and by-laws.[10] Complicity in an election fraud was not the offense for which the plaintiff was suspended, but non-cooperation in declining to execute the release in advance of a polygraph test. The union was plainly within its rights in conducting an investigation of the election, but it exceeded the statutory limits on its disciplinary powers when it undertook to suspend the plaintiff for refusing to release the polygraph operator from any liability that might arise.

■ It follows that the lower court was correct in its conclusion that the proceedings were void and that Simmons therefore was not required to exhaust internal union remedies.

II

■ The union next argues that the District Court erred in permitting the case to be tried to a jury, and relies heavily on the recent case of McCraw v. United Ass'n of Journeymen & App. of Plumbing, Etc., 341 F.2d 705 (6th Cir. 1965), which held that in suits brought under section 102 of the LMRDA there is no right to jury trial. We sustain the District Court's ruling that the objection to jury trial came too late, for the point was not raised either by pre-trial motion or in the course of the trial, but later in a motion for judgment *n. o. v.* or new trial.

9. In the preliminary injunction hearing the District Court also concluded:
   (1) that the executive board failed to give Simmons a full week's notice of the meeting as required by section 2 of Article XIII. Section 1(b) of that article provides that a member may be disciplined only after notice has been given in accordance with section 2;
   (2) that Simmons sought and was denied a continuance and was denied the right to present his witness; and

(3) that Chinn, who had filed the charges, testified at the hearing, deliberated with the other members of the executive board, and voted upon the charges that he had preferred.

10. See Allen v. Int'l Alliance of Theatrical, Etc., 338 F.2d 309, 315 (5th Cir. 1964); Summers, "Legal Limitations on Union Discipline," 64 Harv.L.Rev. 1049, 1058–62 (1951).

Moreover, despite our great respect for the McCraw court, we are of the opinion that the plaintiff was entitled to a jury trial. The right asserted is indeed one created by statute, but we do not agree that a jury trial is necessarily unavailable because the suit for damages is one to vindicate a statutory right. There is no such cleavage between rights existing under common law and rights established by enacted law, where the relief sought is an award of damages. See Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (action for treble damages under the Sherman and Clayton Acts triable by jury); Porter v. Warner Holding Co., 328 U.S. 395, 401–402, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (action for damages by aggrieved tenant under Price Control Act of 1942 triable by jury); United States v. Jepson, 90 F.Supp. 983, 984–985 (D.N.J.1950), cited with approval by 5 Moore, Federal Practice, par. 38.11[7] (action by the United States under the Price Control Act of 1942 for treble the amount of overcharges triable by jury). See generally 2B Barron & Holtzoff, Federal Practice and Procedure (Wright ed.), § 872.

The plaintiff here is suing both at law and in equity. He seeks an injunction to effect his restoration to membership. He also seeks money damages for injury to reputation, and resulting mental anguish—a cause of action of which the developing common law of torts certainly takes cognizance. We see no reason for not allowing a jury to determine whether the union's wrongful conduct was the proximate cause of the plaintiff's injuries and how much the plaintiff is entitled to recover therefor. A jury determination of damages in no way affects the equity jurisdiction of the judge over the injunction issue. Where issues underlying equitable and legal causes of action have been exactly the same, the Supreme Court has been careful to preserve a litigant's right to jury trial on the factual issues, even where a stronger basis was presented for equitable than for legal relief. See Dairy Queen v. Wood, 369 U.S. 469, 473, 82 S. Ct. 894, 8 L.Ed.2d 44 (1962); Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir. 1961).

We therefore conclude that the defendant's objection to jury trial was both untimely and without merit.

### III

The union further levels an attack on the award of damages, citing two grounds: first, that there was no proof of a causal relationship between Simmons' suspension and the damages allegedly suffered by him; and second, that the award of $15,000 is, in any event, excessive.

In his complaint Simmons alleged that because of the suspension it was made to appear to fellow union members and to others that he was guilty of perpetrating the election fraud and that his reputation in the community was thereby irreparably injured. At the trial evidence was introduced to show that after the suspension, but not before, fellow members of the union and others called him "crook," "thief," "a fraud" and other epithets. It was also shown that late in the evenings he and his wife received anonymous phone calls in which the callers made defamatory remarks about him.

Based upon this evidence the court, without objection, instructed the jury:

"[H]e is entitled to recover such damages, and only such damages, as directly and proximately resulted from the illegal suspension from the union, and you are the sole judges in determining what, directly and proximately, resulted therefrom.

"Next, you must ascertain whether or not the injuries, as claimed by the plaintiff, are the direct and proximate result of the deprivation of the right taken away from him, and if you find none of the damages claimed are the direct and proximate result of the right he here asserts, then, of course, you should return no damages, except nominal."

■ The instruction, of course, was proper, as it has been held that in suits under section 102 of the LMRDA the plaintiff may recover for all damages directly and proximately resulting from the violation of the Act. McCraw v. United Ass'n of Journeymen & App. Plumbing, Etc., 341 F.2d 705, 710 (6th Cir. 1965); Vars v. International Brotherhood of Boilermakers, Etc., 215 F.Supp. 943, 952 (D.Conn.1963), aff'd, 320 F.2d 576 (2d Cir. 1963). The jury was plainly told to limit its verdict to damages directly and proximately flowing from the wrongful act complained of, and the defendant union did not complain of the adequacy of the charge.

■ Section 102 permits "such relief (including injunctions) as may be appropriate." The parenthetic specification of the words "including injunctions" must have been designed to broaden the possible relief to include the equitable remedy, but it cannot be construed to dislodge other forms of relief such as the award of damages where appropriate. The "civil action" which the statute authorizes embraces legal as well as equitable remedies. There is no justification for a narrower construction.[11]

■ Further insisting that there was no proof of a causal connection between the suspension and the injuries allegedly sustained, the union urges that its "Motion to Strike Plaintiff's Evidence," the equivalent of a motion for directed verdict in favor of the defendant, should have been granted. There is, however, no support in the record for this contention. A careful reading of the testimony of Simmons' wife, upon which the union relies, does not show, as the union argues, that she received the anonymous and abusive phone calls before the suspension. On the other hand, the testimony of Garland Jones, Zack Thomas, Floyd Powell and Jesse Serles, Simmons' co-workers, reveals quite clearly that Simmons enjoyed a good reputation before but not after the suspension. The conclusion is inevitable that there was sufficient evidence of causal connection between the suspension and the injury to Simmons' reputation to present a jury question and that the motion was properly denied.

Lastly, the defendant contends that the District Court abused its discretion in failing to set aside the $15,000 verdict as excessive.

A brief reference to this court's experience with the question of its authority to review the size of jury verdicts is instructive. After this court in earlier cases [12] had held that it lacked such authority, treating the amount fixed by the jury as an unreviewable factual finding, our predecessors later, in Virginia Railway Company v. Armentrout, 166 F.2d 400 (4th Cir. 1948), took the position that it is within the power and duty of a federal appellate court to review and determine whether or not the trial court abused its discretion by failing to set aside an excessive verdict. The case did not reach the Supreme Court. However, when this theory was thereafter applied by this circuit in Southern Railway Company v. Neese, 216 F.2d 772 (4th Cir. 1954), the decision was summarily reversed by per curiam order, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955). The Supreme Court recognized the existence of the constitutional question, which it was careful to reserve, of whether the Seventh Amendment bars appellate review of the size of jury verdicts. The Court held that in any event there was no basis in the record for the Court of Appeals to find an abuse of discretion in the District Court's denial of the motion for new trial. Cf. Snyder, Adm'r v. United

11. Our attention has been called to the recent case of International Brotherhood of Boilermakers, Etc. v. Rafferty, 348 F.2d 307 (9th Cir. 1965), where emotional distress, standing alone, was held not an element of damage. The rule of that case has no application to this, for there no injury to reputation was alleged or proved.

12. Barnes v. South Carolina Public Service Authority, 120 F.2d 439 (4th Cir. 1941); Aetna Ins. Co. v. Norris Bros., 109 F.2d 172 (4th Cir. 1940).

States, 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955), reversing United States v. Guyer, 218 F.2d 266 (4th Cir. 1954).

Debate continues as to whether and under what circumstances a federal appellate court may review the quantum of a jury verdict.[13] We find it unnecessary here to offer answers to the questions left unresolved by Neese, including the Seventh Amendment issue, for, apart from the constitutional question, we, like the Supreme Court in that case, find no abuse of the trial court's discretion, which is concededly broad.[14]

■ We operate in a narrower area of discretion than district courts in the supervision of jury verdicts. It is not enough if our appraisal of a jury's calculation of damages does not run parallel to the trial judge's appraisal. In reviewing the justness of a verdict the broader scope of discretion is in the trial judge, and the Supreme Court has made it plain that the appellate court must stand aside.

The Court has acknowledged the possibility of appellate intervention only in the most extreme circumstances, as where the verdict is not merely excessive but "monstrous," a term borrowed from the old English case, Beardmore v. Carrington, 2 Wilson 244 (1764). In very few cases, however, where such a possibility was discussed has this high hurdle been surmounted.[15]

■ Although Simmons lost no wages, there was proof, clear and fully detailed, of injury to his reputation, with accompanying mental anguish. While the jury's verdict appears to be generous, it is sufficiently grounded in the evidence. If we assume for present purposes that a power exists in the most extreme cases to review the District Court's refusal to interfere with the jury's assessment of damages, we find here no occasion to interfere.[16]

The judgment of the District Court is Affirmed.

13. See the discussions by Judge Medina in Dagnello v. Long Island R. Co., 289 F. 2d 797 (2d Cir. 1961), and by Professor Moore in 6 Moore, Federal Practice, par. 59.08 [6].

14. See Affolder v. N. Y., C. & St. L. R. Co., 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683 (1950); Hayes v. N. Y. Central R. Co., 311 F.2d 198, 201 (2d Cir. 1962); Taylor v. Canadian Nat'l Ry. Co., 301 F. 2d 1, 3 (2d Cir.), cert. denied, 370 U.S. 938, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962).

15. See Bankers Life and Casualty Co. v. Kirtley, 307 F.2d 418, 425 (8th Cir. 1962) ($650,000 punitive damages award deemed "monstrous"). For cases where the court has held the damages not to be monstrous or grossly excessive, see, e.g., Travelers Ins. Co. v. Gulf Nat'l Bank, 307 F.2d 295 (5th Cir. 1962); Phoenix Indemnity Co. v. Givens, 263 F.2d 858 (5th Cir. 1959); Bucher v. Krause, 200 F.2d 576 (7th Cir. 1952); Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825 (3d Cir. 1951); Southern Pac. Co. v. Guthrie, 186 F.2d 926 (9th Cir. 1951). See also the discussion in 3 Barron & Holtzoff, Federal Practice and Procedure (Wright

ed.), § 1302.1 and cases cited at n. 17.20. Attention should also be drawn to Whiteman v. Pitrie, 220 F.2d 914, 921 (5th Cir. 1955), where the court recognized "that a judgment refusing a new trial may not be reversed in this court merely because the verdict is excessive in fact." The court nevertheless set the verdict aside, stating that the award was based only on sympathy for the plaintiff and that the evidence furnished "no sound basis" for the verdict. See also Complete Auto Transit, Inc. v. Floyd, 249 F.2d 396 (5th Cir. 1957).

16. If it seems strange for the higher tribunal to have in this area less freedom than the lower, it is a lesser anomaly than exists in the federal criminal law, where appellate courts are without power to review sentences imposed by district judges. More instances arise where we would be moved to reduce extravagant prison sentences than immoderate jury awards in civil cases. In both instances we must respect the boundaries of our authority, and a change in the policy does not lie in our hands but must be legislatively ordained. See United States v. Martell, 335 F.2d 764 (4th Cir. 1964).