Burt **EISMAN**

v.

**BALTIMORE REGIONAL JOINT BOARD OF the AMALGAMATED CLOTHING WORKERS OF AMERICA et al.**

**Civ. No. 71–298–M.**

United States District Court,
D. Maryland.

Nov. 29, 1972.

---

Leonard J. Kerpelman, Baltimore, Md., for plaintiff.

Bernard W. Rubenstein and Edelman, Levin, Levy & Rubenstein, Baltimore, Md., for defendants.

## MEMORANDUM OPINION

JAMES R. MILLER, Jr., District Judge.

Plaintiff Burt Eisman has brought this action for money damages against the Amalgamated Clothing Workers of America (ACWA), the Baltimore Regional Joint Board of the Amalgamated Clothing Workers of America (Joint Board), and Romeo Esposito and Sam

Nocella, respectively Assistant Manager and Manager of the Joint Board, under the provisions of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C.A. § 411 et seq. Plaintiff alleges that he was wrongfully expelled from the ACWA without the benefit of due process as guaranteed by section 101(a)(5) of LMRDA (29 U.S.C.A. § 411(a)(5)) which provides that:

> "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

For the reasons set forth in a memorandum opinion herein dated March 20, 1972, this court granted ACWA's motion for summary judgment, thus releasing ACWA from potential liability to the plaintiff.

In response to a request by plaintiff for a jury trial on the claims against the remaining defendants, this court previously ruled that the preliminary question of whether plaintiff had inexcusably failed to exhaust his intra-union remedies before seeking relief from the court, and the more primary issue of whether plaintiff's expulsion was wrongful are matters for the court's determination without the aid of a jury.[1] This court also ruled preliminarily that, this being a suit for damages, the plaintiff, if successful on the issues reserved solely to the court for determination, is entitled to have a jury decide whether the wrongful conduct of the union was a proximate cause of his injuries and the amount of his damages.[2]

A hearing was held by the court on the former two issues. For the reasons set forth below this court is of the opinion that the plaintiff has not inexcusably failed to exhaust his intra-union remedies and that the expulsion of plaintiff from the ACWA was in violation of his rights guaranteed by the LMRDA.

Plaintiff Burt Eisman was a member in good standing of Local Union No. 15 of the ACWA in November, 1970. The Constitution and By-laws of the ACWA organizes the "membership of the Amalgamated . . . into local unions and/or joint boards . . . ."[3] As required by Article VII, section 4 of the ACWA Constitution, Local 15 is affiliated with the Baltimore Regional Joint Board, a body composed of delegates from the various local unions within the Joint Board's jurisdiction.[4]

---

1. There is scant direct authority on the question of the role which a jury may play in deciding the issues raised by a suit brought pursuant to section 102, 29 U.S.C.A § 412. The issue raised by the requirement of exhaustion of internal union remedies under section 101(a)(4), 29 U.S.C.A. § 411(a)(4) is one for the determination of the court since it involves an exercise of the sound discretion of the court in determining whether to assume the jurisdiction authorized by section 102 LMRDA. Cf. Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012, 1016–1017 (4th Cir. 1965); Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 925 (4th Cir. 1963); Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78–79 (2d Cir. 1961). With respect to the issue of whether a labor union has wrongfully imposed discipline upon a member, the Supreme Court in Boilermakers v. Harde-

man, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed. 2d 10 (1971), has stated that the scope of judicial review of union disciplinary action is limited to a mere examination of the record of the union proceeding to determine whether "some" evidence was presented at the union disciplinary hearing to support the charges made. Thus, the reviewing court must determine as a matter of law whether "some" evidence is present in the record. Such a determination is clearly one for the court and not a jury to make.

2. Simmons v. Avisco, Local 713, *supra*, 350 F.2d at 1018; International Bro. of Boilermakers, etc. v. Braswell, 388 F.2d 193, 197–198 (5th Cir. 1968).

3. Article VII, section 1 of the ACWA Constitution and By-laws.

4. Article VII, section 4 of the ACWA Constitution and By-laws provides that

On October 23, 1970, plaintiff attended a meeting of Local 15 at the office of the Joint Board in Baltimore, Maryland. The meeting was chaired by the then president of Local 15, Mr. Irving Selisky. Present were approximately 100 members of Local 15 together with several employees of the Joint Board, among them Romeo Esposito and Sam Nocella, who were not members of Local 15. At the time there was considerable friction between Local 15 on the one hand, and Mr. Nocella and the Joint Board on the other hand relating to the selection of a Business Agent for Local 15 and whether the Business Agent should be elected by Local 15 or appointed by Nocella on behalf of the Joint Board.[5] During the course of the meeting, plaintiff was recognized by Selisky several times to speak. When recognized by the chairman, plaintiff referred to Nocella as "that man," accusing him of allowing work in a union shop to be sent out to be performed in a non-union shop and of other conduct not calculated to endear an offending union executive to a union member. For the purposes of this opinion, it is not necessary to specify further the proceedings of the meeting except to say that Nocella understandably became angry and the meeting did not accomplish the *rapprochement* between Local 15 and the Joint Board for which Nocella had hoped.

On October 24, 1970, Romeo Esposito filed written charges against plaintiff. The charges were that on Friday, October 23, 1970, "at a regular meeting of Local 15, ACWA, Burt Eisman acted with conduct unbecoming a member of the union and with conduct detrimental to the interests of the Amalgamated Clothing Workers of America." The charges were served on plaintiff together with a summons requesting him to appear at a special meeting of the Board of Directors of the Joint Board [6] at the Joint Board's office in Baltimore, Maryland on November 14, 1970, at 11 a.m., to answer the charges.

Plaintiff was present at the Joint Board's office on November 14, 1970, at 11 a.m., and the Board of Directors was aware of his presence. With plaintiff at the union office was one Joseph Lanci, a member of Local 15, who was prepared to testify in plaintiff's behalf. After waiting for 10 to 15 minutes to be called before the Board of Directors, plaintiff and Mr. Lanci left the union hall. Subsequent to plaintiff's departure, the Board of Directors held the disciplinary hearing. At the hearing, Romeo Esposito, the charging party, presented his case against the plaintiff which consisted of testimony concerning (1) plaintiff's alleged participation in a demonstration outside of union headquarters on June 2, 1970; (2) plaintiff's alleged attack on Ben Ronis, a business agent employed by the Joint Board; (3) plaintiff's alleged distribution in the summer of 1970 of leaflets which made unfounded charges against Sam Nocella; and (4) plaintiff's alleged behavior at a meeting of Local 15 held on October 23, 1970.

The Board of Directors voted at the conclusion of Mr. Esposito's case to recommend the expulsion of plaintiff from ACWA.[7] At its next regular meeting on

"all local unions within the jurisdiction of a joint board shall affiliate with such joint board."

5. See Hartner v. Balt. Reg. Jt. Bd. of Amal. Cloth. Wkrs., 339 F.Supp. 1257 (D.Md.1972), for some of the background facts.

6. Article VII, section 1(a) of the Joint Board's Constitution and By-laws states that the elective officers of the Joint Board shall consist of a president, a vice-president, a recording secretary and a board of directors. Article IX(B), sec-

tion 1(a) states that the "Board of Directors shall be the highest governing authority within the Joint Board. . . . "

7. Article XIII, section 5 states with respect to the disciplinary powers of the Joint Board that:

"Hearings shall be held by the Board of Directors or by a committee appointed by it, but all decisions shall be made by a Joint Board meeting after a report has been made to it by the Board of Directors, together with its recommendation."

November 21, 1970, the Joint Board voted to adopt the Board of Director's recommendation and to expel plaintiff from the ACWA.

Within the 30-day period provided by Article XII of the ACWA Constitution, on December 14, 1970, plaintiff appealed the Joint Board's decision to the Executive Board of the ACWA. Plaintiff's appeal was not scheduled to be heard by the ACWA until June 9, 1971. During the interim between the date of the Joint Board's decision and the date on which plaintiff's appeal was scheduled to be heard by the ACWA, plaintiff filed the present suit on March 22, 1971.

██ Defendant's first contention with respect to the above-stated facts is that plaintiff has failed to exhaust his intra-union remedies as required by section 101(a)(4), 29 U.S.C.A. § 411(a)(4), and that, as a result, this court lacks jurisdiction over the subject matter of the complaint. In support of this contention, defendants argue that plaintiff refused to appear at the November 14, 1970 disciplinary hearing and, further, that plaintiff filed the present suit before his appeal to the Executive Board of the ACWA had been decided. This court has previously ruled in a memorandum opinion dated March 20, 1972 that plaintiff need not have delayed the filing of his suit merely because of ACWA's failure to rule upon plaintiff's internal union appeal within a four-month period. See Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 925 (4th Cir.1963). The remaining prong of defendants' contention with respect to plaintiff's alleged failure to appear at the November 14, 1970 disciplinary hearing can be decided without determining whether plaintiff was justified in leaving the Joint Board's office prior to the hearing.

██ It has been held that exhaustion of intra-union remedies is not required where the disciplinary action taken by a labor union is void. Simmons v. Avisco, Local 713, 350 F.2d 1012, 1016 (4th Cir.1965);[8] Libutti v. Di Brizzi, 337 F.2d 216, 219 (2d Cir.1964), aff'd on reh. 343 F.2d 460 (2d Cir.1965); Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78–79 (2d Cir.1961). As recognized by the Fourth and Second Circuits in the above cases, the concept of voidness applies to any situation in which "conceded or easily determined facts show a serious violation of the plaintiff's rights"[9] such as to amount to a denial of fundamental fairness. Thus, the question of whether plaintiff has exhausted his available intra-union remedies is part and parcel of the fundamental issue of liability in this case, that is, whether the plaintiff was expelled from the ACWA without the benefit of due process as guaranteed by section 101(a)(5), 29 U.S.C.A. § 411(a)(5).

In this regard, plaintiff claims that he was not served with "written specific charges." Plaintiff does not dispute that he received a written statement dated October 24, 1970, which charged him with conduct unbecoming a member at a meeting of Local 15 on October 23,

8. In *Simmons*, the Fourth Circuit found that the union disciplinary action was void for the reason that the union had exceeded its powers of discipline as defined in certain articles of the union's constitution. This court is aware that the Supreme Court in Boilermakers v. Hardeman, 401 U.S. 233, 245, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971), has ruled that federal courts may not "determine the scope of offenses for which a union may discipline its members . . ." and that ". . . if a union may discipline its members for offenses not proscribed by written rules at all, it is surely a futile exercise for a court to construe the written rules in order to determine whether particular conduct falls within or without their scope." While it may be true that the Supreme Court's decision in *Hardeman* overrules the Fourth Circuit's ruling in *Simmons* with respect to offenses for which a union member may be disciplined, the concept of voidness, defined as a substantial violation of a union member's due process rights such as to amount to a denial of fundamental fairness, does not appear to be affected by *Hardeman*.

9. Libutti v. Di Brizzi, 337 F.2d at 219.

1970. Nevertheless, it is equally undisputed that plaintiff was expelled from the ACWA for additional reasons which were not set forth in the written statement of charges received by plaintiff. The minutes of the November 14, 1970 Board of Directors meeting [Defendants' Exhibits 1 and 2] clearly establish that plaintiff was tried for participating in a demonstration in front of the union hall on June 2, 1970; attacking a business agent employed by the Joint Board; distributing allegedly libelous leaflets in the summer of 1970; and behaving improperly at the October 23, 1970 meeting of Local 15. Julia Yocum, a member of the Board of Directors of the Joint Board who was present at the November 14, 1970 meeting, testified that the expulsion of plaintiff was based upon all of the actions of the plaintiff including some actions which dated back to June 2, 1970. Finally, defendants freely admit in their statement of proposed findings of fact that the evidence presented to the Board of Directors on November 14, 1970 encompassed matters not set forth in the written notice of charges received by the plaintiff.[10]

The requirement of "written specific charges" imposed by section 101(a)(5) does not mean that union officials must comply with the strict notice requirements of a criminal proceeding. Union charges need only "be so drafted as to inform a member with reasonable particularity of the details of the charges". Jacques v. Local 1418, 246 F.Supp. 857, 859–860 (E.D.La.1965), aff'd 404 F.2d 703 (5th Cir.1967). The charging party may not assume, however, that the accused union member is aware of his wrongdoing and that the accused therefore need not be served with written charges specifying such wrongdoing. Gleason v. Chain Service Restaurant, 300 F.Supp. 1241 (S.D.N.Y. 1969), aff'd 422 F.2d 342 (2d Cir.1970).

Recently, in Boilermakers v. Hardeman, 401 U.S. 233, 245, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), the Supreme Court reaffirmed a union member's right to "written specific charges." Citing Senator McClellan's comment that union charges must be "specific enough to inform the accused member of the offense that he has allegedly committed," the court recognized the power granted to federal courts by section 101(a)(5)(A) LMRDA to examine written charges to "determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense." Id. at 245, 91 S.Ct. at 617. In Boilermakers v. Hardeman, the notice of charges there involved was not confined to a mere statement or citation of the written union regulation that Hardeman was alleged to have violated, but on the contrary ". . . contained a detailed statement of the facts relating to the fight that formed the basis of the disciplinary action." Id. at 245, 91 S.Ct. at 617. Such a notice, said the Court, satisfies section 101(a)(5)(A).

In the present case, however, unlike Boilermakers v. Hardeman, the charges and the notice did not contain a detailed factual statement of the grounds of the charges. Also unlike Boilermakers v. Hardeman, in the present case, the charges and the notice contained only a general statement that on October 23, 1970 at the meeting of Local 15 the plaintiff had in some unspecified manner ". . . acted with conduct unbecoming a member of the union and with conduct detrimental to

---

10. Defendants state in their proposed findings of fact that:

"Although the charge filed by Mr. Esposito by its terms related only to Eisman's conduct at the October 23rd meeting, it is clear from the minutes of the trial, taken by Julia Candy, that the evidence presented also related to Eisman's distribution of the leaflets and his assault upon Business Agent Ben Ronis in June, 1970. It was upon all of this evidence, and the sum total of Eisman's conduct, that the Board found him guilty and recommended his expulsion from the union."

the interests of the . . ." ACWA. Nothing in the charges or the notice suggested that any activities or actions of the plaintiff except those at the meeting of October 23 would be the subject of the disciplinary hearing. Even assuming that the charges were sufficient to give appropriate notice of allegedly improper conduct by plaintiff at the meeting of October 23, they clearly gave no notice that other activities of the plaintiff on other occasions would be the basis or partially the basis for the imposition of discipline of the plaintiff by the Joint Board. Since there is no way for the court to determine whether the Joint Board would have expelled the plaintiff if it had considered only the events of the meeting of October 23, 1970, there is no choice but to conclude that the plaintiff was prejudiced by the determination of the Joint Board to expel him based in whole or in part upon facts and allegations not within the scope of the written charges on which the disciplinary hearing was to have been held. When the hearing was conducted *in absentia*, there was even a greater burden upon the union in the interest of fundamental fairness to limit the evidence of alleged wrongdoing to the facts upon which the written charges were based. The presence of the plaintiff at the hearing would not have enhanced his ability to anticipate before the hearing that his alleged wrongdoing to be explored at the hearing exceeded the scope of that contained in the written charges. Nor would the presence of the plaintiff at the hearing enhance his right to have the hearing limited to the "written specific charges." This court does not mean to say that a union member can in all circumstances ignore internal union disciplinary processes, fail to appear at the union hearing, and then later complain in court that his LMRDA protected rights have been violated where the evidence at the disciplinary hearing exceeded the bounds of the written specific charges. In the present case, however, the union was aware that plaintiff had in fact appeared at the time and place set forth in the notice for the hearing and had appealed the Joint Board decision in accordance with the union Constitution and By-laws. No attempt, insofar as this record discloses, was made by defendant Joint Board within the four-month period contemplated by section 101(a)(4) LMRDA to afford plaintiff another opportunity to defend himself or to restrict the evidence upon which the decision was to be made in the plaintiff's case solely to the matter of the meeting of October 23, 1970. On the facts of this case, the court concludes in short that the disciplinary action expelling the plaintiff from the union was void.[11]

Having ruled that the plaintiff was improperly expelled from the ACWA because he was not provided with the "written specific charges" which formed the basis for his expulsion, it is not necessary at this time to consider plaintiff's other contentions with respect to due process.

The plaintiff has not sought the injunctive relief of reinstatement in the union but has instead solely sought compensatory and punitive damages against the Baltimore Regional Joint Board and Romeo Esposito and Sam Nocella.[12]

---

11. Although not a basis of this court's decision, it is appropriate to note that action of the Joint Board in expelling plaintiff based solely upon his conduct at the meeting of October 23 would raise serious question as to whether such action would be a violation of his right to freedom of speech guaranteed under section 101(a)(2) of LMRDA, 29 U.S.C.A. § 411(a)(2). The evidence tended to indicate that the gravamen of the complaint of Romeo Esposito was not actually the conduct of the plaintiff at the meeting, but what the plaintiff said at the meeting about the actions of Mr. Nocella in his capacity as the chief executive officer of the Baltimore Regional Joint Board. See Cole v. Hall, 339 F.2d 881 (2d Cir. 1965).

12. See Boilermakers v. Hardeman, *supra*, 401 U.S., at 239–240, 91 S.Ct. 609.

■ A question remaining to be answered is whether the plaintiff may continue to attempt to pursue his alleged cause of action against Romeo Esposito or Sam Nocella. It seems clear that the LMRDA did not create a right to sue officers of unions for individual torts committed by them in their private capacities, but only for their violation of a member's LMRDA protected rights where they, in committing such violations, have acted under color of and in abuse of their authority as union officers. Tomko v. Hilbert, 288 F.2d 625 (3d Cir.1961); Cole v. Hall, 35 F.R.D. 4 (E.D.N.Y.1964), aff'd 339 F.2d 881 (2d Cir.1965); Cox v. Hutcheson, 204 F. Supp. 442 (S.D.Ind.1962).

■ The gravamen of the plaintiff's complaint is that he was expelled from the union in violation of his LMRDA rights. As previously noted, Article XIII, section 5 of the Joint Board's Constitution and By-laws required the disciplinary hearing to be held by either the Board of Directors of the Joint Board or by a hearing committee appointed by the Board of Directors. The uncontroverted evidence here is that the hearing in this case was conducted before the full Board of Directors. It is admitted that the Board of Directors recommended, in accordance with the Constitution and By-laws,[13] to the full Joint Board that the plaintiff be expelled. No evidence has as yet been produced regarding the occurrences at the Joint Board meeting of November 21, 1970 at which apparently the recommendation of the Board of Directors was presented to the Joint Board and the plaintiff was expelled from the union. While the actual vote for expulsion apparently was made by the Joint Board, composed of delegates elected by affiliated locals, and was apparently based upon a recommendation of the Board of Directors,[14] there are allegations, broadly construed, that Nocella and Esposito conspired together to effect the expulsion of plaintiff from the union, that they together acted under color of and in abuse of their authority as officers of the Joint Board in their conspiratorial activities to expel the plaintiff and that one or both of them, in furtherance of the conspiracy, exercised such control over the Board of Directors or the Joint Board as to make the Joint Board and Board of Directors merely subservient instruments of the expressed will of Esposito and Nocella, acting upon their orders. It seems extemely unlikely that such allegations can be proved based upon what this court has heard so far, but the plaintiff is entitled in the absence of grounds for an appropriate motion for summary judgment, to attempt at a trial to produce enough competent evidence in support of the allegations to present a question of fact for the jury to resolve. See Simmons v. Avisco, Local 713, Textile Workers Union, *supra,* 350 F.2d 1018.

For these reasons, an order will be entered setting this case down for jury trial at an early date on the following issues: (1) whether Esposito and Nocella, acting under color of and in abuse of their respective union offices, caused the wrongful expulsion of plaintiff; (2) whether plaintiff suffered any injury which was the proximate result of his wrongful expulsion; (3) the assessment of the amount of compensatory damages to compensate for any such injury; and (4) the assessment of punitive damages if otherwise appropriate.

13. Footnote 7, *supra.*

14. Article VIII, section 1 of the Joint Board's Constitution and By-laws provides, in part, that the Board of Directors shall be elected by the Joint Board from among the Joint Board delegates and shall consist of one member from each affiliated local union.