Raymond N. CARAVAN

v.

**READING TYPOGRAPHICAL UNION NO. 86 and Reading Eagle Company.**

Civ. A. No. 73-1797.

United States District Court,
E. D. Pennsylvania.

July 12, 1974.

Stephen J. Springer, Philadelphia, Pa., for plaintiff.

Maurice Abrams, Philadelphia, Pa., for defendants.

## MEMORANDUM

TROUTMAN, District Judge.

In this action presently before the Court, plaintiff, a former employee of the Reading Eagle and a former member of the Reading Typographical Union

#86 [the Union], has instituted this action against both his former employer and the Union. Plaintiff's action against his former employer is predicated upon Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), under which he is seeking damages, reinstatement and attorney's fees for violation of the collective bargaining agreement then in existence between the employer and the Union. Plaintiff's cause of action against the Union, with which we are here concerned, arises under Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act [LMRDA], 29 U.S.C. § 411(a)(5), for which jurisdiction is conferred by 29 U.S.C. § 412. Section 101(a)(5) of the LMRDA is contained in subchapter II of the LMRDA, entitled "Bill of Rights of Members of Labor Organizations", 29 U.S.C. §§ 411–415, and is concerned with safeguards against improper disciplinary actions. Section 101(a)(5) provides as follows:

> "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

Specifically, plaintiff claims that he was disciplined, fined, and suspended by defendant Union, without being served with specific written charges, without being given a reasonable time to prepare his defense or afforded a full and fair hearing in violation of 29 U.S.C. § 411(a)(5). The facts underlying plaintiff's claim are set forth in the amended complaint, the affidavits of plaintiff and the president of defendant Union, Harold H. Boyer, and the latter's deposition, and are as follows:

Prior to November, 1971, plaintiff was a member in good standing of defendant Union and had been employed by the Reading Eagle Company as a journeyman linotype operator for more than three years. Sometime in November, 1971, several newspaper clippings were called to the attention of Harold H. Boyer [Boyer], the Union's president, which identified plaintiff as the owner of the Caravan Printing Company in Pottsville, Pennsylvania. On the basis of this information and other information furnished by several other employees, Boyer, on November 27, 1971, addressed the following letter to plaintiff:

> "For operating a non-union printing establishment while holding a situation in the Reading Eagle-Times Chapel, I, as president, and in enforcing the laws of this union, am taking the following action against you:
>
> (1) You will immediately cease to operate or do any work whatsoever in the Caravan Printing Co., 2nd and West Arch Sts., Pottsville, Pa.
>
> (2) You must within forty-five (45) days of the above date divest yourself of any financial interest in the Caravan Printing Co.
>
> (3) As of this date your name is ordered moved to the bottom of the priority list in the Eagle-Times Chapel and you will not be allowed to hold any priority until parts (1) and (2) of this letter are complied with. (ITU General Laws, Article V, Sec. 3, page 101).
>
> (4) You must pay dues on all money earned at the Caravan Printing Co. for the years 1969, 1970 and 1971 at the rate in effect as of this date which is 5%. Your statement of earnings covering this period must be substantiated by W2 forms or federal income tax returns for 1969 and 1970, and for 1971 by a sworn statement from the person doing your bookkeeping or tax work. You have 20 days to pay dues so owed.
>
> Failure to comply with any of the preceding four sections shall necessitate that I turn this matter over to the Union for further action.

You have five (5) days from this date to file written notice of intent to appeal this action if you so desire."

Boyer was authorized to send this letter by the unanimous vote of the Executive Board, in a special meeting which was convened without notice to plaintiff and which was, therefore, conducted in his absence. As a result of plaintiff's failure to respond to the November 27, 1971, letter, Boyer again referred the matter to the Executive Board. The Board directed that the following letter dated December 20, 1971, be addressed to Willard Schultz, a Union steward in the employ of defendant company:

"From and including Tuesday, Dec. 21 and until further notice Raymond Caravan is denied the privilege of working either as a regular or a sub within the jurisdiction of this Union.

Said action was necessitated by Mr. Caravan's refusal to comply with a section of a letter delivered to him from this office dated Nov. 27, 1971, which pertains to payment of dues owed.

This directive will remain in effect until such a time as Mr. Caravan makes a proper settlement with this Union."

Again, plaintiff received no notice of the Union action which precipitated the letter. Upon the receipt of this letter, plaintiff apparently left the employment of the Reading Eagle Company and there is no indication on this record that he took any steps to initiate or exhaust any intra-union remedies prior to the initiation of this action. On April 10, 1972, plaintiff was ultimately suspended for non-payment of dues, after which this action was commenced on August 7, 1973.

Presently before the Court is the motion of defendant Union, which seeks to dismiss the complaint for failure to exhaust intra-union remedies and for failure to state a cause of action under Section 101(a)(5) on the ground that the Union's action against plaintiff was the result of plaintiff's failure to pay dues. In addition to opposing the above motion, plaintiff filed a motion for summary judgment against the Union on the grounds that there is no genuine issue of material fact and that plaintiff is entitled to judgment as a result of the Union's violation of plaintiff's rights under Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5) as a matter of law.

If plaintiff was, in fact, operating a non-union printing establishment, he would have done so in violation of Article V, Section 3 of the General Laws of the International Typographical Union [ITU] which provides:

"No journeyman shall hold priority in more than one office nor shall a journeyman retain priority standing or situation in an office if he performs work over which the International Typographical Union has jurisdiction, either supervisory or mechanical, in another printing office whether or not the journeyman is interested financially or otherwise in said office.
. . ."

In this action, plaintiff does not challenge the validity of this provision and it is of no relevance in the disposition of this case whether plaintiff did or did not operate a non-union printing establishment. Our inquiry in this litigation is limited to the questions whether plaintiff was suspended, fined or disciplined for operating a non-union printing establishment and, if so, whether he was accorded the rights guaranteed to him under Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5). Defendant argues that plaintiff was not suspended, fined or otherwise disciplined for operating a non-union printing establishment, rather plaintiff's ultimate suspension was brought about by reason of non-payment of dues, which renders the procedural safeguards of Section 101(a)(5) inapplicable. Secondly, defendant argues that the letter of November 27, 1971, was merely a charge and demand

made against plaintiff by Boyer, and not a final adjudication. This charge, according to defendant, set into motion three formal steps of internal remedies within the structure of the Union, which were readily available to plaintiff. Since plaintiff took no steps to invoke these remedies, the Union argues that this action should be dismissed. Plaintiff, on the other hand, argues that the basis of his discipline, fine and ultimate suspension was the determination that he was operating a non-union printing establishment and that the determination was made without prior notice of the specific charge, without a reasonable time to prepare a defense and without a full and fair hearing. The facts are undisputed and the resolution of these issues turns on the letter dated November 27, 1971, from Boyer to plaintiff. Defendant contends that the letter merely constituted a charge against plaintiff and plaintiff contends it constituted a final adjudication on the charge of operating a non-union printing establishment. The information contained in the newspaper clippings and supplied by several unnamed employees furnished Boyer with a reasonable basis to bring charges against plaintiff, and conceivably would provide prima facie evidence that plaintiff was actually operating a non-union printing establishment in contravention of the ITU laws. Such information, however, cannot be allowed to provide the basis of a summary adjudication where a union member has had no notice of the charge, no time to prepare a defense and no opportunity for a full and fair hearing on the charge.

We are compelled to conclude that the letter dated November 21, 1971, constituted a summary adjudication that plaintiff was guilty of operating a non-union printing establishment and im-

posed sanctions therefor. First, the letter begins by affirmatively stating that "[f]or operating a non-union printing establishment while holding a situation in the Reading Eagle-Times Chapel . . .". Thus, plaintiff was presented with a fait accompli—a determination that he was, in fact, operating a non-union printing establishment, for which sanctions were imposed. By reason of this determination, certain action was taken against plaintiff, including demands to cease operation of the printing company, to divest himself of any interest therein, and to pay dues on any monies earned therefrom. If it had not been determined at that time that plaintiff had violated the laws of the ITU, it would not have been necessary to impose any sanctions therefor or to have taken any action at that time. In addition, the Union took another action against plaintiff, by denying him priority until he ceased operating and divested himself of any interest in the printing company. The loss of priority was to take effect immediately, prior to a hearing on the question whether plaintiff did, in fact, operate such a company and, accordingly, constituted "discipline" within the meaning of the act.[1] Finally, the letter advised plaintiff not of his right to a hearing, but rather to his right to appeal. If the letter constituted a charge, as defendant argues, it would have notified plaintiff of the charge and of his right to a hearing. Instead, it imposed sanctions for operating a non-union printing establishment one of which constituted "discipline" within the meaning of the act and notified plaintiff of his right not to a hearing, but of appeal. Defendant's assertion that the letter was "inartfully drawn" is clearly an understatement, and for the foregoing reasons, we must conclude that the letter constituted notice of a summary adjudication to the effect that plaintiff was operating a non-union printing estab-

---

1. In the light of this conclusion, we make no finding on the question whether the other action taken against plaintiff constituted "discipline" within the purview of the Act.

lishment and notice of disciplinary action taken against him which was effective immediately.

In the second letter dated December 20, 1971, plaintiff was denied the privilege of working within the jurisdiction of the Union, ostensibly on the ground of failure to pay the dues demanded in the previous letter. For this reason, defendant argues that plaintiff's suspension was for non-payment of dues, thereby requiring none of the procedural safeguards enumerated in the act. These dues, however, were imposed on monies earned by plaintiff in the operation of his printing· establishment. Thus, the basis for plaintiff's suspension was for failure to pay dues arising from his non-union printing establishment, where it was never established in accordance with the procedural safeguards required by the act that plaintiff actually operated. such an establishment. The denial of working privileges within the jurisdiction of the Union is under the circumstances of this case at the very least "discipline" and more likely it is tantamount to a suspension for failing to pay dues on monies earned in the operation of a non-union printing establishment. Accordingly, we conclude that the combined effect of the letters of November 27, 1971, and December 20, 1971, was to discipline and ultimately suspend plaintiff for operating a non-union printing establishment.

## I. *Exhaustion of Intra-Union Remedies*

■ The first ground asserted by defendant union as a ground for dismissal is plaintiff's failure to exhaust intra-union remedies in violation of the Constitution and By-Laws of the Union and in violation of 29 U.S.C. § 411(a)(4), which reads as follows:

"No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before an administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respond-

ents in such action or proceeding . . . : *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof. . . ."

The ITU By-Laws prohibit, under penalty of summary expulsion, an appeal to a civil court for redress from an action by the Union until he has exhausted his rights of intra-union appeal. While this provision indicates a strong union policy favoring exhaustion of remedies, defendant correctly concedes that a union may not limit a member's right to sue his union. The question whether intra-union hearing procedures must be exhausted is a question reserved to the discretion of the Court. *Amalgamated Clothing Workers of America Rank and File Committee v. Amalgamated Clothing Workers of America, Philadelphia Joint Board,* 473 F.2d 1303, 1308 (3d Cir. 1973); *Semancik v. United Mine Workers of America, District 5,* 466 F.2d 144, 150–151 (3d Cir. 1972); *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir. 1961), cert. denied 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). The purpose of the exhaustion provision is to further the purpose of the LMRDA to achieve union self-government by giving unions a reasonable opportunity to correct abuses and by encouraging them to set up machinery for the prompt and fair disposition and review of disputes. *Simmons v. Avisco, Local 713 Textile Workers Union,* 350 F.2d 1012, 1016 (4th Cir. 1965). This salutary policy fosters union self-regulation, and for this reason, we would under ordinary circumstances, require exhaustion of intra-union remedies. In the instant case, plaintiff alleges that he complied with the Constitution and By-Laws of the defendant Union and the ITU in connection with internal hearing procedures. This, however, is a conclusionary allegation and there is not a scintilla of evidence on the record before

us that plaintiff took any steps to utilize the available intra-union procedures.

Alternatively, plaintiff claims that he is not required to exhaust any internal union hearing procedures because the actions taken by the Union are void; exhaustion would be futile; and the remedies allegedly available to plaintiff are uncertain, illusory and inadequate.

Initially, we find plaintiff's argument that exhaustion of intra-union remedies would be futile highly unpersuasive. First, plaintiff claims that exhaustion should not be required because the Union has consistently taken a position opposed to plaintiff and makes no indication that it will alter its views. Farowitz v. Associated Musicians of Greater New York, Local 802, 330 F.2d 999, 1002–1003 (2d Cir. 1964). The basis of plaintiff's argument is that the appeals of Arthur Pelton, who also worked in a non-union printing establishment, were denied. Here, however, plaintiff is challenging the factual determination made by the Union without a hearing and plaintiff does not challenge the validity of the provision under which he was suspended. Secondly, plaintiff claims that exhaustion should not be required because of the fact that Boyer and one other member of the executive board would sit on the five-member executive committee which would ultimately hear his case and, accordingly, the potential for bias or lack of impartiality would render an appeal futile. The complaint against Boyer and the Executive Committee is not that they were biased, and there is no showing of a personal animosity between plaintiff and Boyer. The sole complaint is that Boyer and the Executive Committee acted too hastily in reaching their conclusions.

Plaintiff's argument that exhaustion should not be required because the action of the Union was void is more persuasive. It has been held that exhaustion of union remedies is not required when disciplinary actions imposed by the union are void. Simmons v. Avisco Local 713, 350 F.2d 1012 (4th Cir. 1965); Libutti v. DiBrizzi, 337 F. 2d 216 (2d Cir. 1964), aff'd on rehearing, 343 F.2d 460 (2d Cir. 1965); Eisman v. Baltimore Regional Joint Board of Amalgamated Clothing Workers of America, 352 F.Supp. 429 (D.Md.1972); Archibald v. Local 57 Int'l Union of Operating Engineers, 276 F.Supp. 326 (D. R.I.1967). The concept of voidness has been applied

> "to proceedings where no proper notice was given, where the tribunal was biased, where the offense charged was not one specified in the union constitution or where there had been other substantial jurisdictional defects or a lack of fundamental fairness." Simmons v. Avisco, *supra*, 350 F.2d at 1017.

A union disciplinary action may be considered void " '[w]hen conceded or easily determined facts show a serious violation of plaintiff's rights, [and] the reasons for requiring exhaustion are absent' ". Simmons v. Avisco, *supra*, at 1017; Libutti v. DiBrizzi, *supra*, 337 F. 2d at 219. Where a violation of rights is clear, the two principal reasons for requiring exhaustion of union remedies fail because the Court need spend little time on the applicable law and it would not be materially assisted by the ultimate determination of the tribunals. Sheridan v. Liquor Salesmen's Union Local 2, 303 F.Supp. 999 (S.D.N.Y. 1969). In the instant case, the Union's violation of plaintiff's rights is clear in that it was determined that plaintiff was operating a non-union printing establishment without affording plaintiff any of the procedural safeguards guaranteed by Section 101(a)(5). Thus, the issue here is clear and exhaustion of Union remedies would be of little assistance to the Court. Accordingly, we conclude that exhaustion of intra-union remedies is not required in this case because of the clear violation of plaintiff's Section 101(a)(5) rights and defendant's motion

to dismiss on this ground will be denied.[2]

## II. *Failure to Pay Union Dues*

█ The second ground asserted in defendant's motion to dismiss the complaint is that the action taken against plaintiff was the result of his failure to pay Union dues. If plaintiff was suspended for failure to pay Union dues, the procedural safeguards set forth in Section 101(a)(5) are inapplicable and plaintiff would fail to state a claim under that provision. As previously mentioned, the denial of working privileges within the jurisdiction of the Union by the letter of December 20, 1971, was tantamount to a suspension. The dues which plaintiff failed to pay were not on wages earned from his employment with the Reading Eagle, but were levied on the supposed operation of his own printing establishment. If plaintiff did not operate a printing establishment as charged, no dues would have been owing and plaintiff was not afforded the opportunity to make such a showing. Since the assessment of dues was premissed on the summary adjudication that plaintiff was operating a non-union printing establishment and since the determination was made without affording plaintiff any of the procedural safeguards guaranteeed by Section 101(a)(5), we conclude that the assessment of dues on earnings attributed to the alleged printing establishment was void and, accordingly, defendant's motion to dismiss the complaint on this basis will likewise be denied.

## III. *Plaintiff's Motion for Summary Judgment*

The operative facts of this case as adduced from the affidavits and deposition reveal no genuine issue of material fact so as to render summary judgment appropriate in this case. The letter dated November 27, 1971, constituted notice of a summary adjudication that plaintiff was operating a non-union printing establishment, for which he lost his priority in the Union. No other inference or conclusion could be reasonably drawn from the letter. It is undisputed that prior to that date plaintiff was not served with specific written charges; he was not afforded a reasonable time to prepare his defense; and he was not afforded a full and fair hearing. Moreover, plaintiff lost his priority in the Union as a result of the Executive Board determination until he ceased operating and divested himself of any interest in the purported company. The loss of priority was effective immediately and would continue until plaintiff either complied with the Union's demand or demonstrated, on appeal, that he did not operate such an establishment. Such a sanction clearly constituted "discipline" within the meaning of the act. The letter dated December 20, 1971, ultimately denied plaintiff working privileges in the Union, in effect, suspending him. It is undisputed that no hearing was conducted and that plaintiff was not notified of his right to a hearing. The importance of the "full and fair hearing" provision of Section 101(a)(5) was recently emphasized by the Supreme Court in Int'l Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), where the Court stated:

"Section 101(a)(5)(C) of the LMRDA guarantees union members a 'full and fair' disciplinary hearing, and the parties and the lower federal courts are in full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard of judicial review. We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process. (citations omitted); and we feel that § 101(a)(5)(C) may fairly be said to import a similar require-

---

2. In so deciding, we do not reach plaintiff's contention that the Union remedies are uncertain, illusory and inadequate.

ment into union disciplinary proceedings." 401 U.S. at 245–246, 91 S.Ct. at 617.

In the instant case, none of the procedural safeguards of Section 101(a)(5) were afforded plaintiff prior to his being disciplined on November 27, 1971, and no hearing was afforded plaintiff prior to the ultimate denial of his working privileges on December 20, 1971. The Union did not undertake to notify plaintiff of his right to hearing to rebut the Union's charges, but disciplined and ultimately suspended him on the basis of newspaper clippings and information supplied by unidentified informants. The undisputed facts before the Court compel the conclusion that plaintiff was disciplined without being afforded the rights guaranteed by Section 101(a)(5) and, accordingly, plaintiff's motion for summary judgment will be granted. This matter will continue for assessment of damages and such other relief as is justified.