Hubert **MAXWELL, Harold Cole, Dwaine Slye, William Ditch, Donald Renner, James Foiles, Erick Niebisch, Ralph Vanneste, Edward Wierenga, Plaintiffs,**

v.

**UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), LOCAL NO. 1306, and Terrance J. Hamilton, Peter S. Sierra, Anthony DeSmet, Joseph Nussberger, David Gaul, Bud W. Ransdell, Albert Gruber, Gene Tawney, Frank Schibilla, and Don Hakeman, Defendants.**

No. 79–4033.

United States District Court,
C. D. Illinois.

May 1, 1980.

Martin F. McCarthy and Michael J. McCarthy, Davenport, Iowa, for plaintiffs.

Douglas C. Scovil, Rock Island, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

In this action nine members of Local 1306 of the United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) are seeking declaratory and injunctive relief, as well as compensatory and punitive damages, from UAW Local 1306 and ten individuals who are members or member-officials of the Local. All plaintiffs and defendants have moved for summary judgment pursuant to Rule 56, F.R. Civ.P. While plaintiffs do not ask for summary judgment on the matter of damages, based on this court's view that there exists no genuine issue as to any material fact, the entire case may be, and is, resolved through these motions.

## FACTS

In October 1978, ten members of Local 1306 (the nine current plaintiffs and an additional former plaintiff who has dismissed his complaint as to all defendants) authored a letter[1] which expressed "concern over the implementation of the contract in relation to walk outs and wildcat strikes." Specifically, the letter is critical of the fact that no disciplinary action was taken by anybody against individuals involved in the walkouts and wildcat strikes. The letter states that this lack of discipline has resulted in dissension between employees who have worked and those who have walked out. The letter is addressed to and was sent to the president of International Harvester Co., the employer of the members of Local 1306. The ten individuals all signed their names to the letter.

Subsequently, other members of Local 1306 became aware of the letter and the identities of the ten members who had signed it. Around November 10, 1978, plaintiffs received notice that charges of conduct unbecoming a union member were being brought against them. Defendants admit that the letter was the basis for these charges. On December 19, 1978, a proceeding was held before the trial committee of Local 1306. The trial committee consisted of defendants DeSmet, Nussberger, Gaul, Ransdell, and Gruber. The manner in which the trial committee was selected and the procedure it followed were established by the UAW International and Local constitutions. Five of the current plaintiffs were present for this proceeding, where defendants Tawney, Schibilla, and Hakeman, members of Local 1306, testified that plaintiffs' letter was against the UAW International and Local constitutions and damaging to members of the union. Defendants Hamilton and Sierra are, respectively, the president and recording secretary of Local 1306.

On January 18, 1979, plaintiffs were notified that the trial committee had found them guilty of violating the UAW Ethical Practices Code and would recommend $100 fines at the Local's next membership meeting, and that failure to pay the fines would result in plaintiffs' expulsion from the union. Without any of the plaintiffs appearing at the Local membership meeting on January 27, 1979, the recommendation of the trial committee was approved and adopted. Plaintiffs, under protest, tendered their $100 fines to the Local on February 27, 1979. Plaintiffs allege that, in accord with the International's constitution, they appealed within the Local on February 21, 1979. No action was taken by the Local pursuant to this appeal and the Local claims that no appeal was in fact taken.

In April 1979 plaintiffs then attempted to appeal directly to the International, as provided for in the International's constitution. The International has stated, in letters dated May 11, 1979, June 22, 1979, and October 17, 1979, that an appeal to it is not perfected and cannot be handled unless and until the appealing party furnishes his home address to the International as part of his appeal. Plaintiffs have appealed through their attorneys and have refused to furnish

---

1. Plaintiffs' letter appears in full in the appendix to this opinion.

their home addresses to the International. Consequently, no action has been taken by the International in resolution of plaintiffs' appeal. The International states that plaintiffs' failure to furnish their home addresses is the sole reason for this inaction. On July 2, 1979, plaintiffs filed their complaint challenging the disciplinary action taken against them.

## STATUTE

This complaint was brought under provisions of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 411, 412, and 529. §§ 411 and 412 appear in subchapter II of the LMRDA, which is titled the Bill of Rights of Members of Labor Organizations. § 411 enumerates specific rights which every member of any labor organization shall have, including the rights to meet and assemble freely with other members and to express any views, arguments, or opinions. 29 U.S.C. § 411(a)(2). § 412 provides for a civil action in federal court by any person whose Bill of Rights of union membership has been infringed. § 529 expressly prohibits disciplinary action against union members for exercising any right provided for in the LMRDA. The jurisdictional provisions of § 412 are expressly made applicable to § 529.

The intent of Congress in establishing the Bill of Rights of union members was to protect such members in their relationships with their union. The statute attempts to insure procedural due process to members subjected to union discipline and generally provides for democratic processes in the conduct of union affairs. *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 194, 87 S.Ct. 2001, 2013, 18 L.Ed.2d 1123 (1967). However, it was not the intent of Congress, in passing the LMRDA, to either weaken unions as collective bargaining agents or unduly interfere in internal union affairs. *Wirtz v. Bottle Blowers Assn.*, 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968).

## EXHAUSTION

Defendants assert that the court lacks jurisdiction over this case by reason of plaintiffs' failure to exhaust their intra-union remedies. § 411(a)(4), dealing with the protection of the right of union members to sue, contains a proviso requiring exhaustion of intra-union remedies before an action is brought against the union or its officers. Express limitations on this exhaustion requirement are that it only applies to reasonable hearing procedures that do not exceed four months in duration. Defendants argue that plaintiffs have failed to appeal the decision of the Local to the International in accord with the procedures in the UAW constitution. The dispute in this regard concerns plaintiffs' refusal to supply their home addresses to the International and the International's refusal to process the appeal until the home addresses are furnished.

The exhaustion requirement of § 411(a)(4) was considered at length by the Second Circuit in 1961, after the passage of the LMRDA in 1959. *Detroy v. American Guild of Variety Artists*, 286 F.2d 75 (2d Cir. 1961), *cert. denied*, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). From the recent legislative history, the court in *Detroy* determined that the inclusion of the exhaustion requirement in § 411 was intended "to preserve the exhaustion doctrine as it had developed and would continue to develop in the courts," 286 F.2d at 78. Relying on existing exhaustion principles, the *Detroy* court held that after the institution of an action in the courts, it is discretionary with the court whether or not to require exhaustion of intra-union remedies. This interpretation reflects the plain meaning of the words of the statute, i. e., "may be required to exhaust." Other courts that have reached the issue have adopted this view as to the discretionary nature of § 411(a)(4) exhaustion. *Buzzard v. Local Lodge 1040*, 480 F.2d 35, 41 (9th Cir. 1973); *Semancik v. United Mine Workers*, 466 F.2d 144, 150 (3d Cir. 1972); *Fulton Lodge No. 2 v. Nix*, 415 F.2d 212, 216 (5th Cir. 1969); *Simmons v. Avisco*, 350 F.2d 1012, 1016 (4th Cir. 1965); *NLRB v. Marine Workers*, 391 U.S. 418, 426, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706 (dicta) (1968).

■ In determining the propriety of exercising its discretion to not require exhaustion, courts should consider each case on its own facts, *Detroy, supra,* and in light of the policies underlying the exhaustion doctrine. The relevant policies were stated in *Detroy*:

"The Congressionally approved policy of first permitting unions to correct their own wrongs is rooted in the desire to stimulate labor organizations to take the initiative and independently to establish honest and democratic procedures. Other policies, as well, underlie the exhaustion rule. The possibility that corrective action within the union will render a member's complaint moot suggests that, in the interest of conserving judicial resources, no court step in before the union is given its opportunity. Moreover, courts may find valuable the assistance provided by prior consideration of the issues by appellate union tribunals." (citations omitted) 286 F.2d at 79.

Considering these policies, common law exhaustion principles, and the factual circumstances of a particular case, courts have developed exceptions to the exhaustion requirement.

■ Plaintiffs assert that the exception for void disciplinary proceedings applies to the facts here. This voidness exception arises when "the disciplinary action taken by the union against a member was indisputably illegal or void." *Keeffe Bros. v. Teamsters Local 592,* 562 F.2d 298, 303 (4th cir. 1977); *Simmons v. Avisco, supra* at 1016; *Libutti v. DiBrizzi,* 337 F.2d 216, 219 (2d Cir. 1964); *Caravan v. Typographical Union 36,* 381 F.Supp. 14 (E.D.Pa.1974); *Eisman v. Clothing Workers,* 352 F.Supp. 429 (D.Md.1972).[2] The meaning of the term void in this context was addressed in *Libutti, supra*:

"Voidness is an elastic concept. Because it is tied up with the merits of the claim, its indiscriminate application could

reduce the exhaustion requirement to the tautology that a plaintiff can find present relief in the courts only if his claim has legal merit. That this is a danger, however, does not mean that it is an inevitable result of applying the exception. When conceded or easily determined facts show a serious violation of the plaintiff's rights, the reasons for requiring exhaustion are absent: the commitment of judicial resources is not great; the risk of misconstruing procedures unfamiliar to the court is slight; a sufficient remedy given by the union tribunal would have to approximate that offered by the court. Where, as in this case, conceded facts show a serious violation of a fundamental right, we hold that plaintiffs need not exhaust their union remedies." (citation omitted) 337 F.2d at 219.

■ Defendants admit that the basis of the disciplinary action in this case was plaintiffs' letter. The express allegations in this letter, as applicable here, are that no disciplinary action was instituted by anybody, including the leadership of Local 1306, against union members who violated the union contract with International Harvester. The clear import of the letter, so far as the Union is concerned, must be criticism of the Local leadership. The resulting disciplinary action served to directly inhibit such criticism. These easily-determined facts indicate that there has been a serious violation of the plaintiffs' rights; i. e., the disciplinary action was void. This apparent violation is sufficient, at the very least, to excuse plaintiffs from further exhaustion of intra-union remedies.

■ While the voidness exception alone provides a sufficient basis for not requiring further exhaustion in this case, there are two factors that lend additional support to this result. Exhaustion may not be required when the intra-union remedies are

---

**2.** In *Harris v. Plasterers and Cement Masons Local # 406,* 617 F.2d 438 (7th Cir., 1980), the court rejected application of the voidness exception to the exhaustion requirement of § 411(a)(4). This holding was based on the particular factual circumstances of that case, and implicit in the holding is the view that under other facts the voidness of the disciplinary action would excuse further intra-union exhaustion.

futile, illusory, or inadequate,[3] or when the complaint alleges a violation of free speech rights.[4]

On the facts here, it clearly appears that the intra-union procedures are inadequate. While defendants claim that plaintiffs' appeal to the International is still alive, the undisputed facts create very substantial doubt as to the true viability of the appeal. It has been over seventeen months since the initiation of disciplinary action against plaintiffs, and yet the internal union processes have not resolved the dispute.[5]

When the claimed violation involves free speech, the courts recognize the central role played by this right in the democratic union system envisaged by Congress in the LMRDA. Any chilling of free speech necessarily results in a constriction of the full flow of ideas, opinions, and criticism, essential ingredients in the operation of a democratic organization. Courts recognize that appellate union tribunals have no greater expertise than the courts in evaluating free speech issues. Consequently, prior consideration by the union's appellate system would not significantly aid the court in its resolution of the issues. For these reasons courts are willing to intervene at an early stage in order to protect free speech rights.

From a balancing of the competing policies, on this factual situation it is clear that this court, in the proper exercise of its discretion, should not require plaintiffs to further exhaust intra-union remedies. The prime considerations in reaching this conclusion are the apparently void nature of the union's action, the inadequacy of the intra-union remedies in this case, and the involvement of free speech rights.

## INDIVIDUAL DEFENDANTS

The ten individual defendants assert that they are not proper defendants in this ac-

tion. The basis of this argument is that §§ 411–414 of the LMRDA only deal with labor organizations and make no mention of suits against individuals. Additionally, defendants state that there are no allegations in the complaint that these individuals were acting as agents or officers of the defendant Local.

These same contentions were rejected in *Morrissey v. National Maritime Union*, 544 F.2d 19 (2d Cir. 1976), where the court stated:

"We find equally little merit in the argument that only the Union can be liable for a violation of § 411(a)(2). The civil remedy for a violation of Title I rights is provided in § 412. Nothing in its language indicates that only a labor organization may be sued and the second sentence, which specifies a venue provision for "[a]ny such action against a labor organization", implicitly recognizes that suits may be brought against others. The few cases on the point have held that § 412 extends to suits against individual defendants, at least if it is shown that they were acting under color of union authority. *Vincent v. Plumbers & Steamfitters Local No. 198,* 384 F.Supp. 1379, 1384 (M.D.La.1974); *Eisman v. Baltimore Regional Joint Bd. of Amal. Clothing Wkrs.,* 352 F.Supp. 429, 437 (D.Md.1972), aff'd , 496 F.2d 1313 (4 Cir. 1974); *Talavera v. International Bro. of Teamsters,* 351 F.Supp. 155 (N.D.Cal.1972). Given the Act's intent to curb the power of overweening union officials, this is clearly the right result." 544 F.2d at 24.

This holding was recently reaffirmed by the Second Circuit in *Rosario v. Garment Union*, 605 F.2d 1228, 1246 (2d Cir. 1979), and followed by the Fifth Circuit in *Keene v.*

---

**3.** *Verville v. Intl. Assoc. of Machinists*, 520 F.2d 615 (6th cir. 1975); *Semancik v. UMW, supra*; *Fulton Lodge v. Nix, supra*; *Fruit Packers v. Morley*, 378 F.2d 738 (9th Cir. 1967); *Farowitz v. Assoc. Musicians*, 330 F.2d 999 (2d Cir. 1964).

**4.** *Keeffe Bros. v. Teamsters, supra*; *Semancik v. UMW, supra.*

**5.** While not expressly deciding the issue because of reliance on the voidness exception, it appears that the intra-union remedies here do not meet the "reasonable" and "four month durational" limitations of § 411(a)(4).

*Operating Engineers,* 569 F.2d 1375, 1381 (5th Cir. 1978). Additionally, in *Rosario, supra* at 1246, it was stated that the liability of union officials is not limited to acts done within the scope of their union authority. The intent of the LMRDA was to curb the power of overweening union officials generally, including abuse of their positions or inducement of other officials to do so.

Applying the foregoing principles, defendants Hamilton and Sierra, officers of the Local, and defendants DeSmet, Nussberger, Gaul, Ransdell, and Gruber, members of the trial committee, are all proper defendants, in that their actions were under color of union authority and were proximately related to the alleged violations of plaintiffs' rights. However, defendants' motion for summary judgment must be granted as to Tawney, Schibilla, and Hakeman. These individuals held no official positions in the Local generally or with respect to the proceedings against plaintiffs. The only alleged actions by these individuals was their giving testimony before the trial committee. This giving of opinion testimony by union members who held no official union positions, without more, is an insufficient basis upon which to premise liability.

The court does recognize that plaintiffs brought this action pursuant to § 529, in addition to §§ 411 and 412. The prohibition on improper discipline in § 529 extends to any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof. This provision encompasses the positions held by Hamilton, Sierra, and the trial committee members. Plaintiffs have not presented evidence that defendants Tawney, Schibilla, or Hakeman come within the classifications of § 529.

## SUBSTANTIVE VIOLATION

The landmark case in establishing the viability and breadth of the LMRDA's Bill of Rights for members of labor organizations was *Salzhandler v. Caputo,* 316 F.2d 445 (2d Cir. 1963), where the court stated:

"The LMRDA of 1959 was designed to protect the rights of union members to discuss freely and criticize the management of their unions and the conduct of their officers. The legislative history and the extensive hearings which preceded the enactment of the statute abundantly evidence the intention of the Congress to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain. The statute is clear and explicit." 316 F.2d at 448.

The plaintiffs' letter here comes squarely within the ambit of what Congress wanted to protect through the LMRDA's Bill of Rights. The aim of these provisions was to provide for the democratic functioning of unions by abolishing autocratic practices. By mandating the full panoply of freedoms associated with democratic processes, Congress wanted to insure a free flow of ideas, however unpopular or outspoken, so that the individual union members could make free and independent choices.

The propriety, value, and effects of wildcat strikes and walkouts were undoubtedly major issues confronting Local 1306 at the time plaintiffs wrote their letter. It is in such situations when emotions and feelings are strong and differences of opinion great, that free speech must be protected. By insuring free expression in the unpopular case, our nation seeks to prevent its deterioration into a talismanic symbol lacking substantive effect.

Defendants claim that the disciplining of plaintiffs for violating the UAW Ethical Practices Code is justified under the two express exceptions to free speech rights which appear in § 411(a)(2). Unions have a right to adopt and enforce reasonable rules as "to the responsibility of every member toward the organization as an institution," and as "to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." From an analysis of the legislative history of § 411(a)(2), the court in *Salzhandler* concluded that Congress only intended that there be these two express restrictions on

§ 411(a)'s rights of free expression. By thus limiting the restrictions, unions would be unable to circumvent the enforcement of these rights through the ad hoc application of a myriad of restraints.

The essence of plaintiffs' letter is criticism of the policies of the current leadership of Local 1306. It is not the function of this court to examine the substance of this criticism. Our examination is limited to a determination of whether the disciplining of plaintiffs was justified under either of the two exceptions of § 411(a)(2). Defendants cite UAW Ethical Practices Code, Democratic Practices, page 96, paragraph one,[6] as the rule which plaintiffs violated. This paragraph is substantially a reflection of § 411(a)(2) and generally recites broad principles rather than specific rules of conduct. It is not readily apparent how plaintiffs' conduct actually violated these provisions. In fact, it would appear that the UAW Code would protect rather than condemn plaintiffs' action. Under *Boilermakers v. Hardeman*, 401 U.S. 233, 242, 91 S.Ct. 609, 615, 28 L.Ed.2d 10 (1971), this court is restrained from interpreting union regulations. Consequently, the court's holding is based upon the guarantees of § 411, rather than an interpretation of the UAW code.

It does not appear that plaintiffs' actions harmed the union as an institution within the meaning of § 411(a)(2). Most cases dealing with this restriction involve dual unionism. In our case plaintiffs did not advocate the abolishment of the union or a union schism. One of the concerns expressed in plaintiffs' letter is the lack of unity among union members. It states that divisions have been created among the members because of the lack of discipline. The plaintiffs, rather than advocating the destruction of the union, appear to have been concerned with its unity and effectiveness as a representative of all of its members.

Neither did plaintiffs' conduct interfere with the union's contractual obligations, the second restriction allowed by § 411(a)(2).

The prime concern of the letter was that these obligations were not being fulfilled. Interference with the union's contractual obligations would have existed if plaintiffs had taken the exact opposite position, i. e., support for wildcat strikes. Defendants have not argued that the sending of the letter to International Harvester, the employer with whom Local 1306 dealt, in any way interfered with the union's contractual obligations. In fact, there is no indication whatsoever of any such contractual interference as a result of plaintiffs' actions.

Consequently, the disciplining of plaintiffs on these facts was a clear violation of the rights of free expression guaranteed to union members under § 411. Under the material undisputed facts, plaintiffs are entitled to summary judgment of liability by the remaining defendants.

### RELIEF

Under § 412, the court has authority to grant "such relief as may be appropriate." In their complaint plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and attorney fees. Plaintiffs assert that there remain genuine issues of fact with respect to their actual damages, while defendants claim that the only possible damages to which plaintiffs could be entitled are the amount of their fines and attorney fees.

Based on the court's holding that defendants violated rights guaranteed to plaintiffs by § 411, plaintiffs are clearly entitled to recover the amount of their fines, with interest. In addition, plaintiffs are entitled to reasonable attorney fees and costs, both for this action and the disciplinary proceedings before the union. Attorney fees for both proceedings are justified by reason of the benefits to the union, and union members from the vindication by plaintiffs of their rights of free expression. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

---

**6.** This provision of the UAW Code appears in the appendix to this opinion.

Based on the absence of any indications that these plaintiffs are threatened in the future by similar discipline from these defendants, the court, in the exercise of its discretion, believes permanent injunctive relief is inappropriate at this time.

There is a split in authority on the availability of punitive damages under § 412. The better view, in light of the Congressional policies behind the LMRDA, appears to be that punitive damages are recoverable upon proof of either actual malice or reckless or wanton indifference to the rights of the plaintiff. *Morrisey v. Maritime Union, supra. Boilermakers v. Braswell*, 388 F.2d 193 (5th Cir. 1968), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968). The facts do not show any actual malice by defendants; however, the clear nature of the violation of plaintiffs' rights and the vital importance of these rights does demonstrate a reckless indifference on the part of defendants to the rights of the plaintiffs. Consequently, as punitive damages, each plaintiff is awarded the amount of $500 from the defendants, jointly.

Other than the amounts of the fines paid and attorney fees, the plaintiffs have failed to demonstrate beyond mere speculation the existence of any actual damages proximately caused by the improper discipline. In response to defendants' motion for summary judgment on the issue of actual damages, which is supported by plaintiffs' own deposition testimony, plaintiffs have presented nothing beyond the general allegations in the complaint. Consequently, applying Rule 56(e), F.R.Civ.P., defendants are entitled to summary judgment with respect to actual damages, beyond the amount of the fines and reasonable attorney fees. Counsel for plaintiffs may file a claim, supported by affidavit, on the matter of attorney fees.

Accordingly, IT IS ORDERED that Plaintiffs' and Defendants' Motions for Summary Judgment are in part GRANTED and DENIED, as indicated hereinabove, and judgments will enter herein in accordance with the terms of this decision.

## APPENDIX

### *Plaintiffs' Letter*

International Harvester Co.
Dept. # 20
East Moline, Illinois 61244

Mr. Archie R. McCardell
President & Chief Operation Office
International Harvester Co.
401 No. Michigan Avenue
Chicago, Illinois 60611

Dear Sir:

We the undersigned wish to show our concern over the implementation of the contract in relation to walk outs and wildcat strikes. Those of us who have worked during one or both of these walkouts that have occurred recently feel that ours is a lost cause. Formerly when disciplinary action was taken it served to cool off those who have been instrumential in these walk outs. Now that no discipline is being taken these people feel that they have showed the company that they are above reproach and they have won. The division in our department is very pronounced. This situation gives us the feeling that we are the ones who have been wrong and with no discipline handed out why should we come in to work.

Two walk outs have taken place as of this writing. When will the third take place, and will the same situation prevail as to the discipline of these people involved? Will those people who wish to observe the contract and work be ostrocized as they have in the past two strikes?

The notice we are sending you is an unsigned copy of the notice placed on the bulletin board as of the second of October 1978.

This is a confidential letter and we wish not to have this being passed around and into the hands of the wrong people as things are bad enough without making them any worse.

We would appreciate an answer from you. Send it to any of the men listed below. Thank you.

Respectively Yours,

/s/ Harold E. Cole    /s/ Dwaine W. Slye
/s/ James E. Foiles    /s/ Edward Wierenga
/s/ William H. Ditch    /s/ Albert J. Diemolien
/s/ Erick Niebisch    /s/ Raphael J. Vanneste
/s/ Hubert Maxwell    /s/ Donald M. Renner

*UAW Ethical Practices Code, Democratic Practices*

The democratic principles which have always governed the International Union, UAW, and its Local Unions are:

1. Each member shall be entitled to a full share in Union self-government. Each member shall have full freedom of speech and the right to participate in the democratic decisions of the Union. Subject to reasonable rules and regulations, each member shall have the right to run for office, to nominate and to vote in free, fair and honest elections. In a democratic union, as in a democratic society, every member has certain rights but he also must accept certain corresponding obligations. Each member shall have the right freely to criticize the policies and personalities of Union officials; however, this does not include the right to undermine the Union as an institution; to vilify other members of the Union and its elected officials or to carry on activities with complete disregard of the rights of other members and the interests of the Union; to subvert the Union in collective bargaining, or to advocate or engage in dual unionism.